UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                          :
KAREEM CHARLES,                                           :
                                                          :
                              Plaintiff,                  :
                                                          :                 21 Civ. 5567 (JPC)
             -v-                                          :
                                                          :                 OPINION AND ORDER
CITY OF NEW YORK *et al.*,                                :
                                                          :
                              Defendants.                 :
                                                          :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Kareem Charles brings this action alleging race discrimination, a hostile work environment, and constructive discharge under federal, state, and city law based on workplace treatment he experienced while serving as a firefighter for the New York City Fire Department ("FDNY").  He additionally brings claims of retaliation for actions allegedly taken in response to him raising and resolving prior complaints of discrimination and sexual harassment.  And lastly, he brings a claim against the lone individual he has sued, Defendant Vincent Caraballo, for aiding and abetting certain of these violations.  Defendants have moved to dismiss all claims.

Because the FDNY is not a suable entity, the Court dismisses all claims against that Defendant.  Because Charles has failed to sufficiently allege that any actions taken against him were motivated by his race, the Court dismisses the First and Third Causes of Action for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1983, and the Seventh, Eighth, and Tenth Causes of Action for discrimination, a hostile work environment, and constructive discharge under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human

Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").  Charles also has not alleged that

he engaged in conduct protected by the First Amendment, so any First Amendment claims in the

Third Cause of Action for discrimination or the Fourth Causes of Action for retaliation under 42

U.S.C. § 1983 are dismissed.  Because 42 U.S.C. § 1981 does not provide a cause of action against

municipal defendants or their employees, the Court dismisses the Fifth and Sixth Causes of Action.

And finally, because an individual cannot be liable for merely aiding and abetting their own

discriminatory conduct, the Eleventh Cause of Action also is dismissed.  Except for the Fifth and

Sixth Causes of Action, each dismissal is without prejudice.

However, Charles has adequately alleged retaliation in violation of Title VII, the NYSHRL,

and the NYCHRL, so the Second and Ninth Causes of Action survive as to the City and Caraballo.

For the same reason, the Fourth Cause of Action under 42 U.S.C. § 1983 survives to the extent it

seeks to protect rights guaranteed by section 1981, though only as to Caraballo as Charles has

failed to allege *Monell* liability against the City.

## I. Background

### A.    Facts[1]

On June 29, 2015, Plaintiff Kareem Charles began serving as a firefighter for Defendant

New York City Fire Department ("FDNY"), an agency of the City.  Am. Compl. ¶¶ 6-10.  He

alleges that "throughout the course of his employment," he "was discriminated [against] and

harassed due to his race."  *Id.* ¶ 13.  On May 1, 2019, Charles filed a complaint with the Equal

Employment Opportunity Office ("EEO") alleging that other firefighters and supervisors had

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint. Dkt. 19 ("Am. Compl."); *see also Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

sexually harassed him and discriminated against him on the basis of his race.  *Id.* ¶ 15.  That complaint was administratively closed on January 2, 2020.  *Id.* ¶ 18.

Charles took leave from the FDNY in June 2020 due to the "harassment, racial discrimination and severe bullying" he endured after filing the EEO complaint.  *Id.* ¶¶ 19-20.  He returned in September 2020, when "after extended conversions between Mr. Charles' union attorney and defendant FDNY, it was agreed upon that Mr. Charles would return to the FDNY upon signing a Stipulation and Agreement."  *Id.* ¶ 21.  The parties agree that this agreement bars any claims which arose prior to September 11, 2020.  Dkt. 32 ("Opposition") at 4 ("Defendants are correct in claiming that any occurrences which arose prior to September 11, 2020, are barred due to the Stipulation and Agreement entered into by the parties at that time.").

Though Charles had previously worked at Engine 35, Am. Compl. ¶ 10, he was transferred to Engine 74 pursuant to the September 2020 agreement, *id.* ¶¶ 27-28.  Prior to this reassignment, Charles "began to receive multiple phone calls from defendant Caraballo," who was then a firefighter at Engine 74, "stating he heard Mr. Charles was being transferred to Engine 74 and threatening him not to join his firehouse."  *Id.* ¶ 23.  Caraballo "began to call Mr. Charles several times throughout the day threatening, '[I] heard you are a whistleblower, you are a snitch and the lowest man on the totem pole; do not come to this firehouse.'"  *Id.* ¶ 24 (alteration in original).

Charles began work at Engine 74 on October 22, 2020.  *Id.* ¶ 31.  That day, "the abuse, discrimination and torment immediately recommenced and, to a degree, worsened as Mr. Charles was now being harassed and denigrated for the Agreement he signed."  *Id.* ¶ 32.  Also on that day, Caraballo "began to scream and berate Mr. Charles in front of all other employees" saying that Charles "was not permitted to sit down" and "was not permitted to come to this firehouse."  *Id.* ¶¶ 33-34.  Caraballo "walked around the firehouse screaming and calling Mr. Charles a 'snitch'

and a 'rat.'"  *Id.* ¶ 35.  "[N]o other firefighters would speak or interact" with Charles.  *Id.* ¶ 37. These events caused Charles to experience severe anxiety and insomnia, making it increasingly difficult for him to make it through the day and leading him to speak with FDNY medical staff. *Id.* ¶¶ 38-40.

At the beginning of December 2020, Charles "received notification that another firefighter had made a complaint about him and he was being transferred to Engine 76" which he considers a "demotion."  *Id.* ¶ 41.  Charles later learned that Caraballo was the one who had made the complaint.  *Id.* ¶ 42.

Charles filed another complaint with the EEO on December 6, 2020, alleging that Caraballo had retaliated against him by "making disparaging comments about his prior EEO history, filing a workplace violence incident report form against him and making an offensive comment about priority hires," and that the FDNY had retaliated against him by assigning him to Engine 76.  *Id.* ¶ 43.  But despite Charles filing this complaint and emailing the EEO and an FDNY attorney that he was "being persecuted by the FDNY, its employees, officers and administration" and that the persecution "has reached the level of endangering [his] life and safety," *id.* ¶ 44, "no changes were made," *id.* ¶ 45.  Charles then filed an additional complaint with the Bureau of Health Services, leading to a one-week medical leave.  *Id.* ¶¶ 46-47.  Eventually, on January 8, 2021, Charles felt that he "had no choice but to constructively discharge his employment, effective immediately." *Id.* ¶ 50.

## B.    Procedural History

Charles initiated this lawsuit on June 25, 2021.  Dkt. 2.  After Defendants requested leave to file a motion to dismiss on November 22, 2021, Dkt. 15, Charles filed the Amended Complaint on December 15, 2021, Dkt. 19.  In the Amended Complaint, Charles brings eleven causes of

action against Defendants.  These are: (1) race discrimination in violation of Title VII, against all Defendants, Am. Compl. ¶¶ 51-54; (2) retaliation in violation of Title VII, against all Defendants, *id.* ¶¶ 55-57, (3) race discrimination in violation of 42 U.S.C. § 1983, against all Defendants, *id.* ¶¶ 58-63; (4) retaliation in violation of 42 U.S.C. § 1983, against all Defendants, *id.* ¶¶ 64-66; (5) race discrimination in violation of 42 U.S.C. § 1981, against all Defendants, *id.* ¶¶ 67-69; (6) retaliation in violation of 42 U.S.C. § 1981, against all Defendants, *id.* ¶¶ 70-72; (7) race discrimination in violation of the NYSHRL and the NYCHRL, against all Defendants, *id.* ¶¶ 73-75; (8) a hostile work environment in violation of the NYSHRL and the NYCHRL, against all Defendants, *id.* ¶¶ 76-78; (9) retaliation in violation of the NYSHRL and the NYCHRL, against all Defendants, *id.* ¶¶ 79-81[2]; (10) constructive discharge in violation of the NYSHRL and the NYCHRL, against all Defendants, *id.* ¶¶ 82-86; and (11) aiding and abetting in a violation of the NYSHRL and the NYCHRL, against Caraballo, *id.* ¶¶ 87-89.

Defendants moved to dismiss on March 11, 2022.  Dkt. 28 ("Motion").  Charles opposed that motion on April 21, 2022.  Dkt. 32.  Defendants replied on May 13, 2022.  Dkt. 33.

## II.  Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] While the Ninth Cause of Action states that it is brought "[a]gainst all individually named defendants," the language in that cause of action refers to the "Defendants" generally, Am. Compl. ¶¶ 79-81, as opposed to the Eleventh Cause of Action, which also is brought "[a]gainst all individually named defendants" but refers specifically to the actions of only "defendant Caraballo," *id.* ¶¶ 87-89.  The Court therefore treats the Ninth Cause of Action as brought against all Defendants.

inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### III.  Discussion

#### A.  Threshold Issues

At the onset, the Court notes that, as Defendants argue, Motion at 16, the FDNY is not a proper defendant in this case. *See* N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *cf. Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (holding that the New York City Police Department is a non-suable entity under this provision). Charles does not argue otherwise. *See generally* Opposition. Therefore, the Court will terminate the FDNY from this action.

Additionally, the Court dismisses Charles's claims under 42 U.S.C. § 1981, the Fifth and Sixth Causes of Action, because "42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981." *Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018). This principle applies equally to claims against municipal employees, including in their individual capacities. *See Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 284 (S.D.N.Y. 2019). But while the Court dismisses these causes of action, it construes the claims under section 1983 in the Third and Fourth Causes of Action as also seeking to enforce rights

guaranteed by section 1981.  *See Duplan*, 888 F.3d at 616 (construing section 1981 claims as section 1983 claims).

**B.    Race Discrimination Claims**

Charles brings claims of race discrimination, against all Defendants, in the First Cause of Action under Title VII, Am. Compl. ¶¶ 51-54, in the Third Cause of Action under section 1983, *id.* ¶¶ 58-63, in the Fifth Cause of Action under section 1981 (which has been dismissed), *id.* ¶¶ 67-69, and in the Seventh Cause of Action under the NYSHRL and the NYCHRL, *id.* ¶¶ 73-75. Defendants argue that Charles has failed to allege any details of discriminatory conduct on the basis of his race.  Motion at 10.

**1.    Title VII**

Charles's First Cause of Action alleges race discrimination against all Defendants in violation of Title VII.  Am. Compl. ¶¶ 51-54.  To sufficiently plead discrimination under Title VII, a plaintiff must "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  Ultimately, the plaintiff must show that "(1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Harris v. NYC Hum. Res. Admin.*, No. 20 Civ. 2011 (JPC), 2021 WL 3855239, at *6 (S.D.N.Y. Aug. 27, 2021) (internal quotation marks omitted).

In evaluating the Amended Complaint, then, "the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'"  *Vega*, 801 F.3d at 87 (alteration in original) (quoting

*Twombly*, 550 U.S. at 570).  The plaintiff must have "at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  The motivation component requires only that an adverse employment decision be motivated "at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason."  *Vega*, 801 F.3d at 87 (quoting *Stratton v. Dep't for the Aging*, 132 F.3d 869, 878 (2d Cir. 1997)).

Charles has pleaded no allegations that allow for the inference that any employment action, adverse or otherwise, taken against him while working at Engine 74 was motivated by his race.  Crediting the allegations in the Amended Complaint, the workplace mistreatment that Charles suffered was tied to either his complaint to the EEO in May 2019 or his subsequent September 2020 agreement with the City.  *See* Am. Compl. ¶¶ 24 (Caraballo telling Charles:  "[I] heard you are a whistleblower, you are a snitch and the lowest man on the totem pole; do not come to this firehouse." (alteration in original)); 35 ("Defendant Caraballo walked around the firehouse screaming and calling Mr. Charles a 'snitch' and a 'rat.'").  The only allegation which could even possibly relate to Charles's race is found in Charles's contention that he alleged in a December 2020 EEO complaint that "Defendant Caraballo retaliated against Mr. Charles by making disparaging comments about his prior EEO history, filing a workplace violence incident report form against him and *making an offensive comment about priority hires*."  *Id.* ¶ 43(a) (emphasis added).  But Charles provides no further details about the substance of this alleged comment by Caraballo or its context, including whether the comment even related to his race.  Indeed, this comment would have been made after Charles was assigned to Engine 74 pursuant to his stipulation and agreement with the FDNY.  *See id.* ¶¶ 21, 27.  Caraballo's alleged "offensive comment about priority hires" therefore could have been alluding to FDNY management's

decision to assign Charles to Engine 74 in connection with an apparent settlement, especially since the Amended Complaint lists this comment as one that entailed retaliation by Caraballo against Charles. *Id.* ¶ 43. From the limited allegations in the Amended Complaint, it is impossible to tell. And even had Caraballo's alleged comment related to Charles's race, Charles provides insufficient details for the Court to assess whether it amounted to more than a stray comment. While stray remarks may be probative of discriminatory intent, the court must consider "(1) who made the remark," "(2) when the remark was made in relation to the employment decision at issue," "(3) the content of the remark," and "(4) the context in which the remark was made." *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 742 (2d Cir. 2014). With Charles only pleading that in a separate administrative proceeding he accused Caraballo of making an "offensive comment about priority hires," without any further details of the content or context of that comment, the Court cannot assess these factors. Charles therefore has not pleaded that this prior remark creates even "minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

The Court therefore dismisses Charles's First Cause of Action for racial discrimination in violation of Title VII.[3]

---

[3] Charles's First Cause of Action is labeled only "Race Discrimination," Am. Compl. at 8, but includes an allegation that "Plaintiff was forced to endure a hostile work environment," *id.* ¶ 53. Because Charles also brings an explicit claim for a hostile work environment under the NYSHRL and the NYCHRL in the Eighth Cause of Action, *id.* ¶¶ 76-78, it is not clear to the Court that Charles also intends the First Cause of Action to allege a hostile work environment under Title VII. To the extent he does seek to do so, the Court dismisses such a claim because, as discussed in this section, Charles has failed to allege that any treatment he experienced at Engine 74 was due to his race. *See Everett v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2022 WL 2342693, at *7 (S.D.N.Y. June 29, 2022) ("To state a race-based claim for a hostile work environment, the plaintiff 'must plead facts that would tend to show that the complained of conduct . . . [was] because of the plaintiff's' race." (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007))).

2.        **Section 1983**

Charles's Third and Fifth Causes of Action allege discrimination on the basis of race in violation of 42 U.S.C. §§ 1983 and 1981, respectively.  Am. Compl. ¶¶ 58-63, 67-69.  As noted, section 1981 does not provide an independent cause of action for state actors including municipal employees in their individual capacities.  *See supra* III.A.  The Court therefore construes the Third Cause of Action asserting a violation of section 1983 as also seeking to enforce Charles's rights under section 1981.

Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  "Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, protects public employees from various forms of discrimination, including hostile work environment and disparate treatment on the basis of race."  *Littlejohn*, 795 F.3d at 320 (internal quotation marks and alterations omitted).  The "basic elements" of a discrimination claim under section 1983 are "similar" to those under Title VII.  *See Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019); *Vega*, 801 F.3d at 88.  However, for employment discrimination under section 1983, a plaintiff must "establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile [work] environment."  *Naumovski*, 934 F.3d at 214.

Section 1981 provides, in relevant part, that "[a]ll persons . . . shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Thus, to establish a claim under section 1981, a plaintiff must show (1) that the plaintiff is a member of a

racial minority, (2) the defendant's "intent to discriminate on the basis of race," and (3) "discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). The enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). By applying to "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship," section 1981 extends to discrimination in employment. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). A claim for employment discrimination under section 1981 is analyzed under the same framework as section 1983 and Title VII. *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (analyzing section 1981 claim under same adverse employment action framework as Title VII claim). As with a claim of employment discrimination under section 1983, "discriminatory intent is a necessary element of a § 1981 claim." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 368 (S.D.N.Y. 2006); *Patterson*, 375 F.3d at 226 ("[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional."). Additionally, for an individual to be liable under section 1981 or section 1983, the person must be "personally involved in the alleged deprivation" of rights. *Littlejohn*, 795 F.3d at 314 (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

A claim under either section 1983 or section 1981 fails for the same reason as Charles's Title VII claim: Charles has failed to allege that he suffered any discrimination at the workplace on the basis of his race. *See supra* III.B.1.[4]

---

[4] Additionally, section 1983 claims against municipalities like the City cannot be based on *respondeat superior* liability. Instead, a plaintiff must plead and prove "(1) an official policy or

Charles's Third Cause of Action also alleges that Defendants violated section 1983 by "depriv[ing] plaintiff of his rights protected by the First Amendment of the United States Constitution." Am. Compl. ¶ 61. As discussed *infra* at III.D.2, the Court construes this First Amendment allegation as a claim for retaliation under section 1983 and so treats it under that section.

The Court therefore dismisses the Third Cause of Action with respect to race discrimination.

### 3. New York State and New York City Human Rights Laws

Charles's Seventh Cause of Action alleges race discrimination in violation of NYSHRL section 296(1)(a) and the NYCHRL. Am. Compl. ¶¶ 73-75.[5]

NYSHRL section 296(1) makes it "an unlawful discriminatory practice . . . (a) [f]or an employer . . . because of an individual's . . . race . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1). Prior to 2019, "discrimination claims under the NYSHRL and Title VII were generally treated as analytically identical, and addressed together." *Edelman v. NYU Langone Health Sys.*, No. 21 Civ.

---

custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F. 3d 284, 297 (2d Cir. 2020). "[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the government." *Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (brackets and internal quotation marks omitted). For this additional reason, Charles has failed to plead a section 1983 claim against the City under any theory.

[5] The Court notes that an employee, even one who holds the title of manager or supervisor, is not subject to suit for discrimination under the NYSHRL. *See Patrowich v. Chem. Bank*, 473 N.E.2d 11, 12 (N.Y. 1984); *accord Doe v. Bloomberg*, 167 N.E.3d 454, 459 (N.Y. 2021) ("[U]nder [the NYSHRL] a corporate employee simply does not qualify as an 'employer,' regardless of the employee's position or relationship to the employer . . . ."); *id.* ("Accordingly, we held in *Patrowich* that the State HRL does not render employees liable as individual employers."). However, Defendants failed to raise this argument and so the Court does not reach the threshold question of whether Caraballo is a proper defendant under the NYSHRL.

502 (LGS), 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (internal quotation marks omitted).  In 2019, however, the NYSHRL was amended.  *See* 2019 N.Y. Sess. Laws chap. 160. In relevant part, that amendment did not change the text of the NYSHRL's operative provisions; instead, it amended the section governing the statute's construction, which now provides that "[t]he provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed."  N.Y. Exec. Law § 300 (2023).  While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, courts in this District have interpreted the amendment as "render[ing] the standard for claims closer to the standard of the NYCHRL," *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021), which contains similar language mandating liberal construction "regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed," N.Y.C. Admin. Code § 8-130(a). The Court therefore considers Charles's NYCHRL and NYSHRL claims together.

The NYCHRL makes it "an unlawful discriminatory practice . . . (a) for an employer or an employee or agent thereof, because of the actual or perceived . . . race . . . national origin . . . or immigration or citizenship status of any person . . . (3) to discriminate against such person in compensation or in terms, conditions or privileges of employment."  NYCHRL § 8-107(1).  The New York Court of Appeals explained in *Bloomberg* that, for purposes of the NYCHRL, employees "may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."  167 N.E.3d at 460.

"Courts must analyze NYCHRL claims separately from any federal law claims and should construe the NYCHRL 'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'" *Bueno v. Eurostars Hotel Co., S.L.*, No. 21 Civ. 535 (JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F. 3d 102, 109 (2d Cir. 2013)). In particular, the standard for a discriminatory act under the NYCHRL is more lenient than the federal standard. A plaintiff need only show that she was "treated . . . less well, at least in part for a discriminatory reason." *Khwaja v. Jobs to Move Am.*, No. 19 Civ. 7070 (JPC), 2021 WL 3911290, at *3 (S.D.N.Y. Sept. 1, 2021) (quoting *Mihalik*, 715 F.3d at 110 n.8). The severity and pervasiveness of conduct is "relevant only to the issue of damages" and "the challenged conduct need not even be 'tangible (like hiring or firing).'" *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (App. Div. 2009)). It is sufficient to show "differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). Additionally, while truly trivial conduct may not be actionable under the NYCHRL, the "employer has the burden of proving the conduct's triviality under the NYCHRL" as an affirmative defense. *Mihalik*, 715 F.3d at 111.

Even under the more liberal standard of the NYSHRL and the NYCHRL, Charles has failed to sufficiently allege race discrimination under those laws. While Charles has alleged differential treatment by Caraballo, as discussed above, the Amended Complaint, which does not even allege what Charles's race is, *see generally* Am. Compl., contains no allegation indicating that such treatment was at least in part for a racially discriminatory reason. *See supra* III.B.1. The closest that Charles comes is alleging that in his December 2020 EEO complaint, he alleged that Caraballo made "an offensive comment about priority hires." *Id.* ¶ 43(a). But as noted, Charles has provided

no information about this comment—such as its substance, when it was made, or its context—from which the Court can infer that the comment even concerned his race.

As to the City, an employer cannot be held liable under the NYCHRL for the alleged discriminatory acts of a non-supervisory employee unless the employer "knew of" the conduct and "acquiesced in such conduct or failed to take immediate and appropriate corrective action" or "should have known of the . . . conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct." *Torres v. City of New York*, No. 18 Civ. 3644 (LGS), 2019 WL 1765223, at *5 (S.D.N.Y. Apr. 22, 2019) (quoting N.Y.C. Admin. Code § 8-107(13)(b)). Moreover, an employer "shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility." N.Y.C. Admin. Code § 8-107(13)(b)(2). Under the NYSHRL, an employer is not liable for the acts of its employee "unless the employer became a party to it by encouraging, condoning, or approving it." *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998, 1011 (N.Y. 2004) (internal quotation marks omitted). But "calculated inaction in response to discriminatory conduct, may as readily as affirmative conduct, indicate condonation." *Soto v. CDL (N.Y.) L.L.C.*, No. 18 Civ. 5678 (KPF), 2020 WL 2133370, at *14 (S.D.N.Y. May 5, 2020) (internal quotation marks omitted).

Because Charles has failed to allege that Caraballo engaged in racially discriminatory conduct, and has therefore failed to allege any act that could be imputed to the City even if the relevant standards were satisfied, and additionally has failed to allege any other facts from which the Court can infer that the City itself acted with any discriminatory motive, he has also failed to adequately plead his NYCHRL and NYSHRL claims against the City.

The Court therefore dismisses the Seventh Cause of Action.

**C.     NYSHRL and NYCHRL Hostile Work Environment Claims**

Charles's Eighth Cause of Action alleges a hostile work environment in violation of the NYCHRL and the NYSHRL.  Am. Compl. ¶¶ 76-78.  Because the standards for a hostile work environment and discrimination claim under the NYCHRL are identical in every respect, the Court also grants the motion to dismiss the NYCHRL hostile work environment claim for reasons discussed *supra* at III.B.3.

Defendants argue that Charles has failed to allege a NYSHRL hostile work environment claim because he has failed to satisfy the Title VII standard for alleging such a claim and because he has not alleged "any conduct that is frequent and severe enough to establish an objectively hostile work environment."  Motion at 12.  While Defendants are correct on the result, their briefing relies on the wrong standards in getting there.

The NYSHRL was amended in 2019, with two changes that are relevant to Charles's state hostile work environment claim.  The first is the previously discussed language added to New York Executive Law section 300 directing that the NYSHRL "be construed liberally for the accomplishment of the remedial purposes thereof, *regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed*."  N.Y. Exec. Law § 300 (emphasis added).  The amendment was signed into law on August 12, 2019, and this liberal construction language applies to causes of action accruing on or after that date.  2019 N.Y. Sess. Laws chap. 160 §§ 6, 16(d); *id.* chap. 161 § 4(d); *see Europe v. Equinox Holdings*, *Inc.*, No. 20 Civ. 7787 (JGK), 2022 WL 4124763, at *7 n.10 (S.D.N.Y. Sept. 9, 2022).

The same amendment also specifically altered the standards for hostile work environment claims under the NYSHRL.  Prior to the amendment, NYSHRL and Title VII hostile work

environment claims were analyzed in the same manner.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013).  Such a claim would have been brought under section 296(1)(a) of the NYSHRL.  *See, e.g.*, *Mejia v. T.N. 888 Eighth Ave. LLC*, 95 N.Y.S.3d 168, 170 (App. Div. 2019). The 2019 amendment added a new provision, codified at section 296(1)(h), which makes it

> an unlawful discriminatory practice . . . (h) [f]or an employer, . . . to subject any individual to harassment because of an individual's . . . race . . . [or] national origin . . . regardless of whether such harassment would be considered severe or pervasive . . . .  Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.

N.Y. Exec. Law § 296(1); *accord* 2019 N.Y. Sess. Laws chap. 160 § 2.  This has the effect of eliminating any requirement that "harassing or discriminatory conduct be 'severe or pervasive' for it to be actionable and [adopting] instead a more protective standard that prohibits conduct that results in 'inferior terms, conditions or privileges of employment.'"  *Maiurano v. Cantor Fitzgerald Sec.*, No. 19 Civ. 10042 (KPF), 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021) (quoting N.Y. Exec. Law § 296(1)(h)).

Despite the fact that the City has failed to address whether Charles satisfies the correct standard for a NYSHRL hostile work environment claim, the Court grants the motion to dismiss with respect to the Eighth Cause of Action, as Charles has failed to allege conduct at Engine 74 that took place on the basis of his race as discussed *supra* at III.B.

**D.  Retaliation Claims**

Charles brings a series of claims for retaliation.  The Second Cause of Action alleges retaliation in violation of Title VII, Am. Compl. ¶¶ 55-57, the Fourth Cause of Action alleges retaliation in violation of section 1983, *id.* ¶¶ 64-66, the Sixth Cause of Action (which has been

dismissed) alleges retaliation in violation of section 1981, *id.* ¶¶ 70-72, and the Ninth Cause of Action alleges retaliation in violation of the NYSHRL and the NYCHRL, *id.* ¶¶ 79-81.

### 1.    Title VII, NYSHRL, NYCHRL, and (Non-First Amendment) Section 1983 Claims

To demonstrate a *prima facie* case of retaliation under Title VII, "a plaintiff must establish: (1) that [he] participated in an activity protected by Title VII, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action."   *Harris*, 2021 WL 3855239, at *8 (internal quotation marks omitted).   "Protected activities under Title VII include employee complaints about employer discrimination."  *Moncrief v. N.Y. Pub. Libr.*, No. 05 Civ. 2164 (TPG), 2007 WL 2398808, at *5 (S.D.N.Y. Aug. 17, 2007), *aff'd*, 343 F. App'x 627 (2d Cir. 2009).   Furthermore, "[a] plaintiff must also ordinarily plead that the defendant had knowledge of the protected activity."  *Cardwell v. Davis Polk & Wardwell LLP,* No. 19 Civ. 10256 (GHW), 2021 WL 4434935, at *29 (S.D.N.Y. Sept. 23, 2021) (internal quotation marks omitted).   "A plaintiff may meet this pleading standard by pleading facts that permit the Court to 'reasonably infer that she engaged in protected activity known to the Defendants.'"  *Id.* (quoting *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 57 n.8 (S.D.N.Y. 2019)).   The test under the NYSHRL prior to the 2019 amendment was the same as that under Title VII, *see, e.g.*, *Hawkins v. N.Y. State Off. of Mental Health*, 845 F. App'x 9, 10 (2d Cir. 2021); the NYSHRL test only has become easier to satisfy than Title VII following that amendment.[6]   Similarly, a party that plausibly alleges retaliation in violation of Title VII also

---

[6] Because the Court determines that the less permissive Title VII retaliation standard is satisfied here, it need not determine exactly how the 2019 amendment altered the relevant standard under the NYSHRL.

satisfies the "more permissive NYCHRL retaliation standard." *Friederick v. Passfeed, Inc.*, No. 21 Civ. 2066 (RA), 2022 WL 992798, at *11 (S.D.N.Y. Mar. 31, 2022).  Retaliation claims under section 1983 are analyzed under the same framework as Title VII retaliation claims.  *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

The City presents a single argument for dismissal of Charles's retaliation claims, arguing that Charles's protected activity, *i.e.*, the filing of his EEO complaint on May 1, 2019, and the alleged retaliatory actions by Caraballo in October 2020 are too temporally distant to support a causal connection.  Motion at 13-14.  But while a "causal connection may be established by temporal proximity, [it] can also be established through evidence of retaliatory intent." *Nunez v. Metro. Learning Inst., Inc.*, No. 18 Civ. 1757 (FB) (VMS), 2019 WL 5457731, at *2 (E.D.N.Y. Oct. 24, 2019); *see also* Motion at 14 ("Courts within this Circuit are hesitant to find a causal connection when the alleged retaliatory action takes place more than three months after the protected activity occurs, *in the absence of other evidence of causal nexus*." (emphasis added)). Charles does not rely only on temporal proximity to establish his retaliation claims.  Charles also points to Caraballo's comments as direct evidence of retaliatory intent.  Caraballo allegedly said to Charles, "[I] heard you are a whistleblower, you are a snitch and the lowest man on the totem pole; do not come to this firehouse."  Am. Compl. ¶ 24 (alteration in original).  Caraballo also allegedly called Charles a "snitch" and a "rat," *id.* ¶ 35, began screaming at and berating Charles on their first day working together, *id.* ¶ 33, and even called Charles multiple times prior to Charles's first day of work "threatening him not to join his firehouse," *id.* ¶¶ 23-25, with these calls apparently starting as soon as Caraballo learned that he would be working with Charles and so at his first opportunity to retaliate against Charles.  Such statements clearly are sufficient to raise an inference of retaliatory intent at the motion to dismiss stage.

Because Charles has adequately alleged a causal connection between his complaints of discrimination and the treatment he suffered, Defendants' motion to dismiss the Second and Ninth Causes of Action is denied, and their motion to dismiss the Fourth Cause of Action for non-First Amendment retaliation is denied as to Caraballo.[7]

### 2.    First Amendment Section 1983 Claim

Charles's Fourth Cause of Action alleges that Defendants retaliated against him, in violation of section 1983, "in direct response to his recurrent complaints about defendants' unlawful conduct and discrimination." *Id.* ¶ 65. As noted *supra*, his Third Cause of Action also contains an allegation that "[i]n discriminating and retaliating against plaintiff due to his complaints about public concern, defendants deprived plaintiff of his rights protected by the First Amendment of the United States Constitution." *Id.* ¶ 61.

In order "[t]o state a First Amendment retaliation claim [under section 1983], a plaintiff 'must plausibly allege that (1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech.'" *Quinones v. City of Binghamton*, 997 F.3d 461, 466 (2d Cir. 2021) (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018)). "A public employee's speech is protected by the First Amendment when 'the employee spoke as a private citizen and the speech at issue addressed a matter of public concern." *Id.* (ellipsis and internal quotation marks omitted). "To constitute speech on a matter of public concern, an employee's expression must be fairly considered as relating to any matter of political, social, or other concern in the community." *Id.* (internal quotation marks omitted). "But speech that is

---

[7] The Court previously dismissed any section 1983 claims against the City on a theory of *respondeat superior*. *See supra* n.4.

calculated to redress personal grievances—even if touching on a matter of general importance—does not qualify for First Amendment protection." *Id.* (internal quotation marks omitted). "Likewise, the First Amendment does not protect speech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation." *Id.* at 467 (internal quotation marks omitted).

The Amended Complaint fails to allege that Charles engaged in protected speech to support a First Amendment claim.  Nor does Charles even reference a First Amendment claim anywhere in his opposition.  The conduct for which he claims he was retaliated against consists of a May 1, 2019 EEO complaint alleging that he experienced race discrimination and sexual harassment and a stipulation and agreement that Charles subsequently reached with the FDNY which led to his return to work.  Am. Compl. ¶¶ 15, 21.  This was "speech that is calculated to redress personal grievances," *Quinones*, 997 F.3d at 466, and so cannot support a First Amendment retaliation claim.  *See Bland v. New York*, 263 F. Supp. 2d 526, 545 (E.D.N.Y. 2003) ("A claim of retaliation for complaining about sexual harassment that affected only the plaintiff does not raise an actionable constitutional claim under the First Amendment."); *Payne v. Meeks*, 200 F. Supp. 2d 200, 206 (E.D.N.Y. 2002) ("[W]here the primary aim of an employee's speech is to seek redress for a personal wrong, the speech is not protected by the First Amendment merely because its subject matter may affect the public." (internal quotation marks omitted)).  Therefore, the Court dismisses any First Amendment claims brought in the Third and Fourth Causes of Action.

## E.   Constructive Discharge Claim

Charles's Tenth Cause of Action alleges that he was constructively discharged in violation of the NYSHRL and the NYCHRL.  Am. Compl. ¶¶ 82-86.

Under the NYCHRL, it is an "unlawful discriminatory practice" for "an employer . . . because of the actual or perceived . . . race . . . of any person . . . (2) to refuse to hire or employ or to bar or to *discharge* from employment such person." N.Y.C. Admin. Code § 8-107(1)(a) (emphasis added). There is some dispute as to the proper standard of conduct to constitute a constructive discharge under the NYCHRL, *see Tulino v. City of New York*, 813 F. App'x 725, 727 n.2 (2d Cir. 2020), though the First Department has stated that the standard is whether the defendant "deliberately created working conditions so intolerable, difficult or unpleasant that a reasonable person would have felt compelled to resign," *Crookendale v. NYC Health & Hosps. Corp.*, 107 N.Y.S.3d 282, 283 (App. Div. 2019). Regardless, it is settled that such a constructive discharge must be "because of the actual or perceived . . . race" or other protected characteristic of the plaintiff. N.Y.C. Admin. Code § 8-107(1)(a)(2). Therefore, because Charles has failed to allege any discriminatory motive on the part of Defendants, *see supra* III.B, his constructive discharge claim under the NYCHRL must fail just as his discrimination and hostile work environment claims under that statute fail.

As for Charles's constructive discharge claim under the NYSHRL, section 296(1) provides that "[i]t shall be an unlawful discriminatory practice: (a) [f]or an employer . . . because of an individual's . . . race . . . to refuse to hire or employ or to bar or to *discharge* from employment such individual." N.Y. Exec. Law § 296(1) (emphasis added). Again, because Charles has failed to allege any activity that occurred on the basis of his race or any other protected characteristic, his constructive discharge claim under the NYSHRL fails as well.

Therefore, the Court grants Defendants' motion to dismiss the Tenth Cause of Action.

**F.      Aiding and Abetting Claim**

The Eleventh Cause of Action alleges that Caraballo "aided and abetted the discrimination

and abuse perpetrated against plaintiff by condoning, encouraging and allowing such conduct to

occur on account of plaintiff's protected classifications." Am. Compl. ¶ 88.[8]  Under the NYCHRL

and the NYSHRL "an individual may not be held liable merely for aiding and abetting his own

discriminatory conduct but only for assisting another party in violating" those laws.  *Malena v.*

*Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (internal quotation

marks, brackets, and ellipsis omitted); *see also Singhal v. Doughnut Plant, Inc.*, No. 20 Civ. 3295

(ALC), 2022 WL 976885, at *5 (S.D.N.Y. Mar. 31, 2022).  But Caraballo is the only individual

that Charles accuses of discriminating against him, and he does not offer any allegations of Caballo

aiding and abetting anyone else's discriminatory acts.[9]  The Court therefore dismisses the Eleventh

Cause of Action.

**G.      Leave to Amend**

Lastly, the Court considers whether to grant leave to amend.  Under Rule 15(a) of the

Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires." Fed.

R. Civ. P. 15(a)(2).  Charles has not asked the Court for leave to amend the Amended Complaint.

"But even when a party does not ask for leave to amend, the Court may grant leave to amend *sua*

*sponte*."  *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18

---

[8] The Court does not read the Eleventh Cause of Action as pursuing an aiding and abetting claim related to any retaliation suffered by Charles, as that cause of action refers to conduct that occurred "on account of plaintiff's protected classifications" as opposed to in retaliation for protected conduct.  Am. Compl. ¶ 88.

[9] Charles alleges that "no other firefighters would speak or interact with him," Am. Compl. ¶ 37, but he does not allege that this was on account of his race, nor does he allege that Caraballo engaged in any conduct to aid or abet the alleged refusal of other firefighters to speak or interact with him.

(S.D.N.Y. Mar. 31, 2022) (internal quotation marks omitted) (collecting cases).  When deciding whether to grant *sua sponte* leave to amend, "courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility."  *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020).  After considering these factors, the Court will grant Charles leave to amend the Amended Complaint in the event he believes he can remedy the pleading deficiencies identified herein.  Defendants would not be unduly prejudiced by another amendment, particularly because some of Charles's claims survive and because they are on notice as to the basic circumstances underlying the claims.  The Court emphasizes, however, that Charles should amend only if he is able to resolve the pleading deficiencies outlined in this Opinion and Order.  Additionally, because amendment with respect to the Fifth and Sixth Causes of Action under section 1981 would be futile, the Court denies leave to amend those claims.

## IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part and denies it in part.  The Court dismisses all claims against the FDNY.  The Court dismisses the First, Third, Seventh, Eighth, Tenth, and Eleventh Causes of Action against the City and Caraballo without prejudice.  It dismisses the Fifth and Sixth Causes of Action against those Defendants with prejudice.  Additionally, the Court dismisses the Fourth Cause of Action with respect to retaliation for exercise of First Amendment rights as to Caraballo and in its entirety against the City.  The Court denies Defendants' motion as to the Second and Ninth Causes of Action against the City and Caraballo, and as to the Fourth Cause of Action with respect to retaliation for protected activity against Caraballo.  The Court will additionally schedule an initial pre-trial conference by separate Order.

The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 28 and terminate Defendant New York City Fire Department from this case.

SO ORDERED.

Dated: March 31, 2023
       New York, New York

_____
JOHN P. CRONAN
United States District Judge